UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JOHN AUSTIN CHATFIELD, | ) | CASE NO.  C13-1687-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER RE: SOCIAL SECURITY |
| | ) | DISABILITY APPEAL |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff John Austin Chatfield proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court orders this matter AFFIRMED in part and REVERSED and REMANDED in part for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1957.[1]  He has a high school degree and some college,

_____

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of

ORDER
PAGE -1

01  and past relevant work as a prep cook, which is classified as a cook helper.   (AR 20, 33.)

02       Plaintiff filed an application for DIB and protectively for SSI on December 2, 2010,

03  alleging disability beginning May 30, 2010.   Plaintiff's application was denied at the initial

04  level and on reconsideration, and he timely requested a hearing.

05       On July 19, 2012, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff

06  and a vocational expert.   (AR 29-44.)   On July 25, 2012, the ALJ issued a decision finding

07  plaintiff not disabled prior to May 25, 2012, but disabled after that date due to a change in his

08  age category.   (AR 12-22.)

09       Plaintiff timely appealed the denial of disability prior to May 25, 2012.   The Appeals

10  Council denied plaintiff's request for review on August 28, 2013 (AR 1-3), making the ALJ's

11  decision the final decision of the Commissioner.   Plaintiff appealed this final decision of the

12  Commissioner to this Court.

13                              **JURISDICTION**

14       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15                              **DISCUSSION**

16       The Commissioner follows a five-step sequential evaluation process for determining

17  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

18  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

19  not engaged in substantial gainful activity since the alleged onset date.   At step two, it must be

20  determined whether a claimant suffers from a severe impairment.   The ALJ found plaintiff's

21  hepatitis C and amnestic disorder severe.   The ALJ found the record did not support the

22

Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01 existence of a severe joint impairment, and did not find depression to be a medically

02 determinable impairment.

03     Step three asks whether a claimant's impairments meet or equal a listed impairment.

04 The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed

05 impairment.

06     If a claimant's impairments do not meet or equal a listing, the Commissioner must

07 assess residual functional capacity (RFC) and determine at step four whether the claimant has

08 demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to

09 perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but only able to

10 occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  Plaintiff should avoid

11 concentrated exposure to hazards, and can perform simple, repetitive tasks.  Plaintiff cannot

12 work with the general public on a consistent basis.  With that assessment, the ALJ found

13 plaintiff unable to perform his past relevant work since the alleged onset of disability of May

14 30, 2010.

15     If a claimant demonstrates an inability to perform past relevant work, the burden shifts

16 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

17 an adjustment to work that exists in significant levels in the national economy.   The ALJ noted

18 that plaintiff's age category changed to "an individual of advanced age" on May 25, 2012,

19 pursuant to 20 C.F.R. §§ 404.1563 and 416.963.  Using the framework of the

20 Medical-Vocational Guidelines, the ALJ found plaintiff was "not disabled" prior to that date,

21 because his limitations did not have a significant effect on his ability to perform unskilled light

22 work. (AR 21.)  After that date, however, the ALJ found plaintiff "disabled" by direct

ORDER
PAGE -3

01   application of Medical-Vocational Rule 202.06.

02    This Court's review of the ALJ's decision is limited to whether the decision is in

03   accordance with the law and the findings supported by substantial evidence in the record as a

04   whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

05   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

06   reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

07   F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

08   supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

09   F.3d 947, 954 (9th Cir. 2002).

10    Plaintiff argues the ALJ erred in failing to find his joint impairment severe at step two,

11   erred in evaluating the credibility of his subjective symptoms, failed to give sufficient weight to

12   the opinion of Norman Staley, M.D., and erred at step five by finding him not disabled without

13   utilizing a vocational expert.   Plaintiff argues these errors resulted in the assessment of an

14   incorrect RFC.   He requests remand for an award of benefits or, alternatively, for further

15   administrative proceedings.   The Commissioner argues that the ALJ's decision is supported by

16   substantial evidence and should be affirmed.

17   <u>Step Two</u>

18    At step two, a claimant must make a threshold showing that his medically determinable

19   impairments significantly limit his ability to perform basic work activities.   *See Bowen v.*

20   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

21   activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

22   404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

01 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

02 effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

03 1996 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis

04 screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).

05 An ALJ is also required to consider the "combined effect" of an individual's impairments in

06 considering severity. *Id*.

07     A diagnosis alone is not sufficient to establish a severe impairment.   Instead, a claimant

08 must show that his medically determinable impairments are severe.   20 C.F.R. §§ 404.1520(c),

09 416.920(c).   He must, therefore, present evidence of a medically determinable impairment,

10 through signs, symptoms, and laboratory findings, that has lasted or can be expected to last for

11 a continuous period of not less than twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002,

12 1004-05 (9th Cir. 2005).

13     Plaintiff argues the ALJ erred by failing to find his joint impairments severe.

14 However, the Court finds the ALJ in this case reasonably found an absence of evidence to

15 support the existence of a severe joint impairment causing more than minimal functional

16 limitations for a twelve month period.  (AR 15.)   The ALJ noted references in the medical

17 records to neck and right arm pain in September 2011 (AR 294), with multilevel degenerative

18 changes shown on MRI in November 2011 (AR 295).   However, plaintiff subsequently

19 reported improvement after a trigger point injection and medication, and when plaintiff

20 reported pain and tingling in November 2011, it was in a non-diagnostic stocking glove

21 distribution.   In February 2012, plaintiff's wrists and elbows had full range of motion and he

22 was taking no medications.  (AR 290.)   His neuropathy had resolved and he did not follow

01 through with the neurologist.   (*Id.*)   *See Allen v. Comm'r of Social Sec. Admin.*, No. 11-16628,

02 2012 U.S. App. LEXIS 23739 at *5 (9th Cir. Nov. 19, 2012) (an impairment that can be

03 adequately controlled by medication is not severe).

04       While plaintiff disputes the ALJ's characterization of the x-ray findings (AR 283-89) as

05 "minimal" (Dkt. 14 at 7, AR 15), there is no medical evidence that these findings could

06 reasonably be expected to produce the symptoms alleged by plaintiff, or to significantly limit

07 his ability to do basic work activities.   None of the medical opinions included a finding of such

08 an impairment.   While plaintiff testified at hearing about the presence of wrist and elbow joint

09 pain (AR 17, 34-37), the ALJ found plaintiff's statements not credible, as discussed below.

10       Plaintiff also argues that even if his joint impairments were not severe, the ALJ should

11 have accounted for the nonsevere limitations caused by those conditions in his RFC assessment.

12 (Dkt. 14 at 8.)[2] Plaintiff has not identified any functional limitations the ALJ should have

13 included in the RFC assessment, however, and thus has failed to allege a harmful error.   *See*

14 *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless where it is

15 "'inconsequential to the ultimate nondisability determination'") (quoting *Carmickle v. Comm'r*

16 *of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

17       Plaintiff does not establish the ALJ erred either in failing to find his joint impairments to

18 be severe or to account for any such limitations in the RFC assessment.   The ALJ's step two

19 _____

20       2 Plaintiff also mentions a lack of inclusion of any mental health impairments in the RFC, but
fails to explain the assertion or offer any argument.   Absent any other similar reference elsewhere in
plaintiff's assignments of error, the Court finds it likely the reference to mental health impairments

21 represents a scrivener's error.   If not, the Court finds the claim waived.   *See Avila v. Astrue*, No.
C07-1331, 2008 U.S. Dist. LEXIS 79271 at *5-6 (E.D. Cal. Sept. 2, 2008) (citing *Northwest Acceptance*

22 *Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no
explanation in support of claim of error waives issue); *Independent Towers of Washington v.*
*Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

ORDER
PAGE -6

01  finding has the support of substantial evidence and will not be disturbed.

02  Credibility

03  Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04  reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

05  (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

06  260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

07  identify what testimony is not credible and what evidence undermines the claimant's

08  complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).   "In weighing a claimant's

09  credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

10  testimony or between his testimony and his conduct, his daily activities, his work record, and

11  testimony from physicians and third parties concerning the nature, severity, and effect of the

12  symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

13  1997).

14  In this case, the ALJ found that, while plaintiff's medically determinable impairments

15  could reasonably be expected to cause some of the alleged symptoms, he did not find all of

16  plaintiff's symptom allegations credible.   Again, the Court is not persuaded by plaintiff's

17  challenges to the ALJ's decision.

18  A.    Objective Evidence

19  Plaintiff notes the ALJ may not discredit his testimony about the severity of his

20  symptoms solely because they are not supported by objective medicine.   Nevertheless,

21  "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully

22  corroborated by objective medical evidence, the medical evidence is still a relevant factor in

01 determining the severity of the claimant's pain and its disabling effects." *Rollins v.*

02 *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p.  Here, the ALJ gave a number of

03 valid reasons for his credibility findings.

04      The ALJ found the objective medical evidence to be consistent with some limitations,

05 but not to the extent alleged by plaintiff.  The ALJ noted plaintiff told Dr. Benedict Garry in

06 April 2010 that he was "fatigued at times", that the fatigue "came and went", and that he was

07 feeling "ok".  (AR 17, 242-43.)  Plaintiff's physical exam was normal.  When seen again

08 several months later in September 2010, he reported feeling "fine" but tired, and his

09 examination was unremarkable.  (*Id.*; AR 239.)  The same month, Dr. Wakelin evaluated

10 plaintiff as having normal physical exam findings, and plaintiff did not report any symptoms or

11 fatigue.  He was instructed to follow up when he decided to initiate eradication therapy for his

12 hepatitis C.  (AR 17-18, 250-51.)  In May 2011, plaintiff reported feeling fatigued and run

13 down for several months.  Physical findings were within normal limits.  The plan was to

14 "consider" treatment for Hepatitis C.  (AR 18, 238.)  In February 2012, Dr. Blackadar noted

15 plaintiff's report of being "always tired" for a year and a half, but blood work was "only mildly

16 elevated", and plaintiff was not being followed by a specialist.  Physical exam findings were

17 unremarkable.  Under those circumstances, Dr. Blackadar was "unwilling to declare" plaintiff

18 disabled.  (AR 290.)  In May 2012, plaintiff reported pain and fatigue to primary care

19 physician Kevin Welk MD, but no significant exam findings were reported.  (AR 281.)

20      In this case, as one of several different reasons offered in support of the credibility

21 assessment, the ALJ reasonably construed the objective medical evidence as "scant" and

22 containing largely unremarkable objective findings.  (AR 18.)  While plaintiff objects to the

01  ALJ's characterization of his complaints as "debilitating fatigue" (Dkt. 14 at 13), there is no

02  evidence the ALJ applied an incorrect standard in considering the lack of objective evidence

03  support for plaintiff's allegations of an inability to work because of his impairments.   (AR 17.)

04  B.   Daily Activities

05        One need not be "utterly incapacitated" in order to be found disabled under the Social

06  Security Act.   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   Nonetheless, evidence of a

07  claimant's activities may form the basis of an adverse credibility determination where those

08  activities contradict the claimant's testimony or meet the threshold for transferable work skills.

09  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).   *See also*

10  *Molina*, 674 F.3d at 1112-13 ("While a claimant need not '"vegetate in a dark room"' in order

11  to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant

12  reports participation in everyday activities indicating capacities that are transferable to a work

13  setting.   Even where those activities suggest some difficulty functioning, they may be grounds

14  for discrediting the claimant's testimony to the extent that they contradict claims of a totally

15  debilitating impairment.").

16        Plaintiff told his doctor that he did his own cooking, cleaning, shopping, and laundry,

17  had no problem performing personal care, was able to drive a car, did some lawn mowing,

18  managed his own money, read and watched television, and collected coins.   He visited with

19  friends once a week, grocery shopped several times a week, and occasionally played pool.   He

20  indicated he could lift about twenty pounds and could walk for about ten minutes.   The ALJ

21  reasonably found these activities showed a capacity for concentration consistent with at least

22  simple tasks, intact social functioning, and an ability to be in public.   (AR 19.)   The ALJ

01  found the exertional abilities reported by plaintiff to be consistent with an ability to perform

02  light work and "particularly when considered in light of the minimal medical evidence and

03  limited objective findings", to render plaintiff's claim of a total inability to work as less

04  credible.  (AR 19, 233, 270.)  Plaintiff fails to establish that the ALJ's conclusion was not

05  rational.

06  C.    Other reasons

07      The ALJ also provided other additional clear and convincing reasons for finding

08  plaintiff less than fully credible, which plaintiff neither mentions, nor challenges.  *See*

09  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2011) (ALJ appropriately considers

10  inconsistency with the evidence and a tendency to exaggerate in rejecting a claimant's

11  testimony); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a

12  claimant's inconsistent or non-existent reporting of symptoms); *Tommasetti v. Astrue*, 533 F.3d

13  1035, 1039 (9th Cir. 2008) (ALJ appropriately considers an unexplained or inadequately

14  explained failure to seek treatment or follow a prescribed course of treatment); and *Parra v.*

15  *Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment'

16  is sufficient to discount a claimant's testimony regarding severity of an impairment").  *See*

17  *also Molina*, 674 F.3d at 1111 (upholding ALJ's credibility assessment where ALJ provided

18  valid reasons despite one or more invalid reasons for disbelieving a claimant's testimony).   For

19  all of the reasons set forth above, plaintiff fails to demonstrate reversible error in the ALJ's

20  credibility assessment.

21                      Medical Opinion Evidence – Dr. Staley

22      Plaintiff argues the ALJ erred by relying on the opinions of Dr. Staley (AR 72-80),

ORDER
PAGE -10

01 whose consultative evaluation report was written before plaintiff's x-rays and MRI were

02 performed.   Plaintiff argues the findings in these tests "may impose additional limitations even

03 though his cervical symptoms subsided."  (Dkt. 14 at 15.)   However, as discussed above,

04 there is no medical evidence these findings could reasonably be expected to significantly limit

05 his ability to do basic work activities or even to produce the symptoms alleged by plaintiff.

06 The Court does not find error in the ALJ's consideration of Dr. Staley's opinions.

07 <u>Step Five – Medical-Vocational Guidelines</u>

08        The Medical-Vocational Guidelines, or "grids", present a short-hand method for

09 determining the availability and numbers of suitable jobs for claimants, addressing factors

10 relevant to a claimant's ability to work, such as age, education, and work experience.  *See* 20

11 C.F.R. Pt. 404, Subpt. P, App 2.   Their purpose is to streamline the administrative process and

12 encourage uniform treatment of claims.   *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

13        An ALJ may rely on the grids to meet his burden at step five.   *Burkhart v. Bowen*, 856

14 F.2d 1335, 1340 (9th Cir. 1988).   "They may be used, however, 'only when the grids

15 accurately and completely describe the claimant's abilities and limitations.'"  *Id.*  (quoting

16 *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).

17        The existence of a non-exertional limitation does not automatically preclude application

18 of the grids.  *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir.

19 1988).  *See also* SSR 83-14 ("Nonexertional impairments . . . may or may not significantly

20 narrow the range of work a person can do."); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir.

21 1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both

22 exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e)."),

01 *modified at* 794 F.2d 1348 (1986).   Instead, the ALJ must determine whether the

02 non-exertional limitations are "'sufficiently severe' so as to significantly limit the range of

03 work permitted by the claimant's exertional limitations[.]"   *Burkhart*, 856 F.2d at 1340

04 (quoting *Desrosiers*, 846 F.2d at 577).   If so, the grids are inapplicable and the testimony of a

05 vocational expert (VE) is required.   *Id.*

06       Plaintiff argues the ALJ erred by relying on Rule 202.14 to find plaintiff not disabled at

07 step five.   This rule provides that an individual of plaintiff's age, education, and work

08 experience is not disabled if he is capable of performing light work and does not have

09 nonexertional limitations that significantly limit the universe of light work.

10       Plaintiff's argument is based, in part, on his contention the ALJ erred by failing to

11 include limitations caused by his joint pain and by failing to credit his complaints of fatigue.

12 These arguments are derivative of plaintiff's unsuccessful previous assignments of error.

13 However, the Court finds merit in plaintiff's argument the ALJ's restriction on plaintiff's

14 ability to work with the general public on a consistent basis constitutes a significant erosion on

15 the universe of light work, particularly when considered in conjunction with the ALJ's

16 restriction of plaintiff to simple, repetitive tasks.

17       The ALJ cited SSR 85-15 to support his finding that plaintiff's nonexertional limitations

18 do not significantly limit the range of work contemplated by the grids.   The ALJ assessed

19 plaintiff as able to perform simple, repetitive tasks and not able to work with the general public

20 on a consistent basis.   (AR 16.)   However, as discussed below, SSR 85-15 does not justify the

21 ALJ's sole reliance on the grids in light of the nonexertional limitations assessed.

22       SSR 85-15 reflects that basic mental demands of unskilled work include the ability to

01 "understand, carry out, and remember simple instructions[,] to respond appropriately to

02 supervision, coworkers, and usual work situations[,] and to deal with changes in a routine work

03 setting."   SSR 85-15.   The ruling further states that "[a] substantial loss of ability to meet any

04 of these basic work-related activities would severely limit the potential occupational base."   *Id*.

05 While SSR 85-15 could be said to account for the RFC assessment in part, it does not, for

06 example, account for the limitation on work with the general public.

07         The ALJ cited a number of cases from this Circuit as well as from other circuits finding

08 certain nonexertional limitations to not significantly erode the occupational base of jobs set out

09 in the grids.   None of these cases are directly on point with regard to the specific nonexertional

10 limitations imposed by the ALJ in this case.   *Compare Cowen v. Comm'r of Soc. Sec.*, No.

11 08-17641, 2010 U.S. App. LEXIS 21804 at*4 (9th Cir. Oct. 22, 2010) (finding work at the

12 <u>medium</u> exertional level not significantly diminished by limitations on public contact and

13 unskilled entry-level work), *with Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988) (finding

14 application of grids inappropriate where ALJ limited claimant to jobs that were not highly

15 stressful, did not require comprehension of complex instructions, and did not require dealing

16 with the public).

17         In sum, the ALJ's decision lacks substantial evidence support for the conclusion that the

18 grids completely and accurately account for the assessed limitations.   Because the ALJ

19 improperly relied solely on the grids in reaching his step five conclusion, this matter is

20 remanded for further evaluation at step five, with the assistance of a VE.

21                                    **<u>CONCLUSION</u>**

22         For the reasons set forth above, this matter is REMANDED for further proceedings

ORDER
PAGE -13

01 consistent with this Order.

02          DATED this <u>4th</u> day of April, 2014.

03

04                                              _____
                                                Mary Alice Theiler
05                                              Chief United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER
PAGE -14